**CULBERTSON et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12232.

Circuit Court of Appeals, Fifth Circuit.

June 30, 1948.

Benjamin L. Bird, of Fort Worth, Tex., for petitioners.

Homer R. Miller, Robert N. Anderson and Harry Baum, Special Assts. to the Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

For nearly a quarter of a century William O. Culbertson and R. S. Coon were partners in the cattle-raising business near Dalhart, Texas. Coon raised many cattle but had no children. Culbertson raised both. He had four sons, a daughter, and a one-half interest in approximately fourteen hundred head of cattle at the time of the transaction around which this case centers. Coon furnished the finances; Culbertson looked after the cattle. About the time the Culbertson boys reached the age of twelve, each, like most ranch-reared boys, began to work on the ranch at various and sundry jobs.

In 1939, due to the age and health of Mr. Coon, it was determined to liquidate the herd and dissolve the partnership. To that end the partnership sold some three hundred and fifty head of Braford cattle to the four boys, but before the transaction was fully completed, a friend of the parties sought to buy these cattle from the partnership. At the suggestion of Mr. Coon, the friend bought them from the boys, paying a profit of $5.00 per head.[1]

By October, 1939, the herd had been reduced to approximately fourteen or fifteen hundred registered cattle. Thereupon Culbertson offered to purchase the remainder of the herd at a price around $65.00 per head. Four persons were present in the office of Coon & Culbertson in Dalhart on the night the proposition of the sale of Coon's interest in the partnership cattle to Culbertson—or to Culbertson for his four sons—

---

[1] Although this transaction had no direct connection with the partnership that is alleged to have been formed later between Culbertson and his sons, nevertheless, it is indicative of the interest of the Culbertson boys in cattle and the interest of Mr. Coon in the Culbertson boys.

tentatively agreed upon. The witnesses recount Coon's long-standing avocation d hobby of breeding Hereford cattle and interest in seeing that the strain thus loped should continue. The witnesses greed: that Coon stated that he would ept Culbertson's proposition to buy his erest in the cattle provided that Culbertson would, in turn, sell same to the latter's four sons, who had worked on the ranch and who would be able to carry the herd into the future; that Culbertson desired to talk to his sons first; that he did talk to them, and that the offer was accepted and the trade was consummated by a bill of sale from Coon & Culbertson to Culbertson, and another bill of sale from Culbertson to his four sons. All witnesses agreed s to the fine quality of registered Hereford cattle that had been bred through the years, Coon's interest in its continuation, as well as his interest in, and friendship for, the Culbertson boys—for the education of two of whom he had provided in his lifetime and for the other two he had provided in his will.

There was no mention of income tax or tax consequences in the discussions leading up to, and consummating, the deal. All witnesses were agreed that the idea uppermost was the continuation of the cattle-breeding business of Coon & Culbertson through the instrumentality of Culbertson and the sons of Culbertson, who, since childhood, had worked on the ranch with the cattle and one of whom was then foreman, and later manager, of the ranch. There is not the slightest proof in the evidence but that the four Culbertson boys each acquired a one-fourth interest in the one-half interest of Coon in the cattle in question. The partnership of Coon & Culbertson, as well as Culbertson and his sons, owned no land but utilized grazing leases.

It is conceded that the father put up the money for the purchase of the cattle from Coon and that he in turn sold that half interest to his sons and took their note therefor; that in addition to the note being given by the boys for the amount necessary to purchase Coon's cattle, they also gave their note for the purchase of a one-half interest in other miscellaneous properties which had theretofore been used at the ranch.

Neither is it disputed that a considerable portion of the purchase price was returned to the elder Culbertson by the sale, in due course, of partnership cattle, and that the balance then remaining unpaid on the notes was canceled as a gift. It is also undisputed that thereafter Culbertson gave a one-eighth interest in his own cattle to his daughter, but since it was not contemplated that the daughter would perform services or contribute capital to the partnership, no effort is made here to have her considered, or included, as a partner for tax purposes.

The plan whereby all four of the boys would work on the ranch when they were not in school was disrupted by the War. All were put into the military service. The education of the younger ones was delayed, and at the time of the hearing two of the boys were still in school. Upon his release from the service, the oldest son resumed his job as foreman or manager of the ranch and the second had also done some work there after his return from the War and from college.

The Dalhart newspaper, quoting Mr. Culbertson, announced in December, 1939, the fact of the dissolution of the Coon & Culbertson partnership, and that in the future the business would be operated by the Culbertson boys under the name of Culbertson and Sons. A bank account was opened in the name of W. O. Culbertson and Sons, upon which the father and either of his four sons could check. The membership of Coon & Culbertson in the American Hereford Association at Kansas City, the place where Hereford cattle are registered, was changed to W. O. Culbertson and Sons, to whom an appropriate certificate was issued.

Mr. W. H. Coon, the nephew of the elder Coon, wrote to Mr. Wright, the manager of the National Finance Credit Corporation, on November 23, 1939, stating that: "Mr. W. O. Culbertson and Sons will take over the Coon & Culbertson herd November 1st, 1939. Mr. R. S. Coon is selling his interest in the cattle to this new firm—W. O. Culbertson and Sons." Concededly, W. O. Culbertson and Sons was not a corporation or mere trade name. A partnership return for W. O. Culbertson and Sons for the year 1940 was filed with

the Collector of Internal Revenue. The letterheads of W. O. Culbertson and Sons showed the names of the father and his four sons thereon.

A reading of all the evidence thus far could leave no one in the slightest doubt as to the intent, purpose, and effect of the transaction in question. However, the Commissioner contends that the picture changes upon observance of a second instrument that was drawn up after the first bill of sale was executed from father to sons. This second bill of sale also looms large in the consideration of this case by The Tax Court. It will be remembered that two of the Culbertson boys were minors·at the time of the formation of the partnership. It will also be remembered that the new partnership required financing. When inquiry was made from Mr. Wright of the finance company, Mr. Culbertson was told that it would be necessary for him to have some kind of a paper showing that he had a right to execute mortgages, sign notes, and the like for the partnership. With only this purpose in view, he sought out an attorney whose idea of the way to accomplish such a result was to prepare another bill of sale wherein the right to execute mortgages and notes, and manage the affairs of the company until the youngest boy became twenty-one, was ostensibly retained in the father. It is undisputed that neither of the boys was aware of the execution of this second bill of sale until long afterwards. It seems also quite clear that the second paper was without any legal force or effect because the father had theretofore made and delivered to his sons an absolute bill of sale to the cattle with no strings attached. He, acting alone, could no more recall it than

"Can storied urn, or animated bust
Back to its mansion call the fleeting
breath."

The father was a ·ranchman and unlearned, particularly in the law. After the import of the second bill of sale was realized, a proceeding was had in the State Court wherein it was declared null and void. The Tax Court considers this proceeding as collusive. At least ·it was nonadversary because it was with the consent of all parties that the proceeding was brought and

the invalidity of the instrument decre... Assuredly this paper did not represent a... valid agreement of the parties. Had t... proceeding been adversary, no other... sult could possibly have been reached... cause the second bill of sale was, to ... the least, voidable and not binding up... the sons in the absence of their ratificatio... It would not have protected the finance... company as against them. It could not... have had the effect of postponing the initiation of the partnership until the youngest son became twenty-one years of age, nor could it have otherwise adversely affected the rights acquired, and vested, under the true bill of sale.

It was the purpose and intent o... all the parties to form an actual, real, an... bona fide partnership between Culbertson... and his four sons, with the full expectation... and purpose that the boys would, in the future, contribute their time and services to the partnership. We do not consider that it is illegal, income-tax-wise or otherwise, for a partnership to be formed in consideration, or contemplation, of services rendered, or to be rendered, by the partners. The fact that the boys were called into the military service by the United States, as well as the fact that some of them had not, during the tax period, completed their education so as to devote their full time and attention to the partnership is in no wise indicative that the partnership was formed for the purpose of dividing the family income, or for the purpose of income tax savings. The failure by a partner to render service to the partnership or to contribute capital originating in him, is, after all, but a circumstance to be considered in determining the reality or actuality of an alleged family partnership. The failure to do either is not a condition precedent.

There is no evidence but that the partnership was entered into validly and in good faith, and that the first bill of sale from the father to the sons was a legal and binding document; that this partnership was entered into without any idea, purpose, or thought of the tax consequences but with the idea of carrying on the breeding of fine Herefords in the traditions of that section of the country. The fact that in

seeking financial assistance a void document was executed by one of the partners which contained ineffective and untrue recitations would not destroy the legality and the bona fides of the partnership validly entered into theretofore. Undue weight and emphasis given to this invalid document by The Tax Court seem to have led it into a holding that is in disregard of the realities and contrary to the purpose and intent of the parties. When this second bill of sale is considered in the true light of its invalidity, and in the light of the circumstances attending its execution, it will readily be seen that the first bill of sale evidenced the real transaction and that it remained unimpaired and in full force and effect.

In the cases of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, the Court determined that the arrangements there were mere devices entered into for income tax savings and purposes and not for the benefit of the partnership. To conclude in this case that the plan and purpose of an aging father to enlist the interest and services of his four ranch-reared, experienced, and stalwart sons in the carrying on of his and his partner's life work was not for the partnership's benefit seems to require the exaltation of suspicion over the realities to an extent that the exigencies of the times for tax collection neither deserve nor demand. There was no showing in 1939, when the partnership was formed, of the anticipation of huge profits. The old partnership was in the process of liquidation and had reduced its herd from several thousand to fourteen or fifteen hundred. No one dreamed then that the lush prices of a year or so later were so close at hand. On the contrary, the old partners were only a short way out of the greatest depression the country has ever known and the memory of hardships, drouths, and dust storms, necessitating the shipping in of foodstuffs for the cattle, was still fresh in their minds.[2]

Nor do we think the fact that subsequently, and in an entirely separate transaction, the father undertook to make provision for his daughter by giving her a partnership interest in the cattle which he had retained disproves the bona fides of the arrangement with his sons for her interest in the cattle is not a subject of the controversy here. Taxpayer concedes that she contributed no capital and neither performed, nor intended to perform, services in the operation of the ranch.

It seems that out of the cases of Lusthaus v. Commissioner, supra and Commissioner v. Tower, supra—which cases were properly decided on their peculiar facts— a concept has been born and is carefully nurtured by the tax collecting agencies that no partnership is valid—income-tax-wise— between members of a family unless the members of the family coming into the partnership actually contribute money or had actually, theretofore, rendered services. Neither statute, common sense, nor impelling precedent requires the holding that a partner must contribute capital or render services to the partnership prior to the time that he is taken into it. These tests are equally effective whether the capital and the services are presently contributed and rendered or are later to be contributed or to be rendered. Moreover, a partnership is formed to act in the future and not in the past and when it is fully expected, intended, and agreed that the

---

[2] Mr. W. O. Culbertson testified as follows: "Well, we done a lot of visiting, talking about the herd and the hardships and hazards we'd went through and the general conversation about what had happened to us and we'd done a very good job getting through. Had dry weather and shipped hay in to feed the cattle and it was pretty tough. Mr. Coon happened to be able to take care of finances through his credit and we didn't go broke as usually some people did in them years, but we had a general discussion about that and he told me during that night, he brought that up about the cattle and he says he had a desire to see this herd go on, it was a herd of cattle it takes years to develop and he says, 'Developing a good herd of cattle is a lifetime job.' He had made that remark a lot of times, and he had a desire to see the herd go on. He says, 'I will sell you my interest in the herd if you will in turn sell it to your four boys at the price you are paying for it' and this was the price that I had mentioned."

984

incoming partner will render services to the partnership, the Government should not be heard to say: "I will not recognize you as a partner even though you in good faith entered into it. I took you into the Army to fight a war and you did not perform services for the partnership as you had agreed to do."

 The inquiry as to a family partnership for income tax purposes must relate to evidence bearing on the reality, the actuality, and the bona fides of the transaction,[3] or the absence thereof. Where the proof conclusively shows that a family partnership was entered into for the benefit of the business and not the purpose of evading, avoiding, or dividing, income taxes, it will be deemed a partnership for income tax purposes even as it is recognized in the law for all other purposes.

Income generally should be taxed to him who owns it. The Culbertson boys owned one-half the cattle that produced the income here.

Neither the Constitution, the statutes, nor public policy requires that partnerships between fathers and sons be outlawed or discouraged. The desire of a father in any age or clime, with a business that he cherishes and a son that he loves, to have such son with him in his business and to carry it on when he no longer can, was not rendered an anathema by the Lusthaus and Tower cases, and aberrations from the salutary rules announced in those cases should not now do so.

We think that the evidence shows conclusively that the partnership here was actual, real, bona fide, and entered into for the benefit of the partnership, with no thought of income taxes and no purpose to evade, divide, or defeat their collection.

The judgment of The Tax Court is, therefore,

Reversed.

3 See Belcher v. Commissioner of Internal Revenue, 5 Cir., 162 F.2d 974, 976, wherein this Court said: "Notwithstanding the fact that there is no Federal statute which makes the gift of a partnership interest to a member of the taxpayer's family illegal, or that expressly lays the tax upon a husband or father who makes a lawful gift of a partnership interest to members of his family, and although it has long been, and is still, the law that a taxpayer has the right to avoid or lessen his taxes by means that are lawfully available, it is now well settled that such means must be realities, not shams, substance, not shadows. Family partnerships are not ipso facto illegal under Federal law but such partnerships must be shown to be accompanied by investment of capital, participation in management, rendition of services by the family partners, or by such other indicia as will definitely demonstrate the actuality, the reality, and the bona fides of the arrangement."