## NICHOLAS v. DAVIS.
### No. 4567.

United States Court of Appeals
Tenth Circuit.
April 27, 1953.

Carlton Fox, Atty., Dept. of Justice, Washington, D. C. (Charles S. Vigil, U. S. Atty., Denver, Colo., Clifford C. Chittim, Asst. U. S. Atty., Boulder, Colo., Charles S. Lyon, Acting Asst. Atty. Gen., and Ellis N. Slack, A. F. Prescott, and William L. Norton, Jr., Sp. Assts. to Atty. Gen., on the brief), for appellant.

George T. Evans, Denver, Colo. (Emory L. O'Connell, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

John R. Davis brought this action against Nicholas, Collector, on a claim for refund of income taxes for the year 1946. By direction of the trial court a verdict was returned in favor of John R. Davis. Judgment was entered thereon and Nicholas has appealed.

In 1921, John R. Davis and his two brothers, Rees T. Davis, Jr., and Leslie E. Davis, entered into the wholesale florist business at Wheatridge, Colorado. Shortly after the business was organized they formed a corporation under the name, "Davis Brothers, Florists." They continued the business as a corporate enterprise until 1938. The business was successful and made substantial profits. In 1938 they dissolved the corporation and created a partnership, hereinafter referred to as the first partnership, in which each of the three brothers owned a 1/3 interest. In 1942 the three brothers gave consideration to the future of the business. They realized they were approaching the time in life when they could no longer actively manage and carry on the business. Each of them had sons and daughters, and they desired to perpetuate the business as a family enterprise. The sons had shown an aptitude for the florist business and desired to engage in such business. While the brothers concluded it would be better for the ultimate management of the business to be placed in their sons, they also desired to effect an arrangement which would eventually give their daughters an interest in the business, without powers of control or management. They conceived the plan of creating a new partnership in which the three brothers would be general partners, their wives limited partners, and in which each son would become a general partner when he reached his majority. It was contemplated that the shares of the wives would eventually go to the daughters.

On January 4, 1943, the three brothers, their respective wives, and Melrose W. Davis, a son of one of the partners, executed a written partnership agreement, to become effective as of January 1, 1943. It was promptly recorded. The partnership so created will be referred to hereinafter as the second partnership. Under that agreement the three brothers were general partners and each owned a 3/18 interest. The three wives were limited partners and their respective interests were: Lucy R. Davis, 1/18; Elizabeth S. Davis, 3/18; and Estella A. Davis, wife of John R. Davis, 3/18. Melrose W. Davis, a son, was also a limited partner and owned a 2/18 interest.

Out of earnings received from the first partnership, John R. Davis made a gift to Estella A. Davis of $12,500. She in turn paid that amount to the second partnership as her contribution to its capital.

On January 4, 1946, a written partnership agreement, effective January 1, 1946, was entered into by the three brothers, their respective wives, and two of the sons. It was recorded December 20, 1946. The partnership thus created is hereinafter referred to as the third partnership. On the basis of their contribution to capital the shares of the general partners were as follows: Rees T. Davis, Jr., 3/18; John R. Davis, 2/18; Leslie E. Davis, 3/18; Melrose W. Davis, 2/18, and John R. Davis, Jr., 2/18.

On the basis of their contribution to capital the shares of the limited partners were as follows: Lucy R. Davis, 1/18; Elizabeth S. Davis, 3/18, and Estella A. Davis, 2/18.

A third son was killed in 1948 shortly after he reached his majority.

John R. Davis and Estella A. Davis each made a gift to John R. Davis, Jr., of $4,166.66, which he contributed to the capital of the third partnership. From and after January 1, 1943, Estella A. Davis received her share of the distributions of earnings of the second and third partnerships. Her share over the period averaged in excess of $14,000 annually. The money she received as distributions of earnings of the partnership was deposited by her in a bank account, to the joint credit of herself and her daughter, Ruth Park. Estella A. Davis and Ruth Park were the only persons authorized to write checks on such bank account. Estella A. Davis had absolute domination and control of the partnership profits distributed to her, except to the extent that she authorized withdrawals therefrom by her daughter, Ruth Park. None of the distributed profits received by Estella A. Davis

were used to pay household living expenses or family expenses. John R. Davis had no domination or control over the distributions of profits made to Estella A. Davis, and none of them were disbursed for his benefit. The handling of such distributions by Estella A. Davis carried out the original plan to make equitable provision for the daughters.

The foregoing facts were established by uncontradicted evidence. Nicholas offered no evidence and neither cross-examination nor other circumstances, reflected in the record, in anywise impeached or contradicted the evidence adduced in behalf of John R. Davis, nor cast any doubt on its verity. No part of such evidence was inherently improbable. Any doubt of bona fides that might have arisen from the fact that the contribution of Estella A. Davis to the capital of the second partnership was funds received by her through a gift from John R. Davis is completely overcome by the proof that Estella A. Davis received her full share of the distributions of partnership profits; that she exercised complete domination and control over them; that none of them were expended for household or family expenses; and that John R. Davis received no benefit from them and in nowise dominated or controlled them.

■ The second and third partnerships were formed for a legitimate, and, indeed, a commendable business purpose. It was to continue the business as a family enterprise, under the management of the sons, after the three brothers reached an age where they could not carry on, and, at the same time, effect an arrangement that would make equitable provision for the daughters. The evidence fully established the bona fides of such partnerships.

■ When controlling, positive, and uncontradicted evidence is introduced, and when it is unimpeached by cross-examination or otherwise, is not inherently improper, and no circumstance reflected on the record casts doubt on its verity, then under the principles laid down in Chesapeake &

Ohio Ry. Co. v. Martin, 283 U.S. 209, 215–220, 51 S.Ct. 453, 75 L.Ed. 983,[1] it may not be disregarded, even though adduced from interested witnesses, and no question of credibility or issue of fact is presented for determination by the jury.

Therefore, the judgment is affirmed.

BRATTON, Circuit Judge (dissenting).

Viewed in the light of the land-mark case of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, it seems clear to me that the evidence and the inferences fairly to be drawn from it presented an issue of fact for submission to the jury and that it was error to direct a verdict for plaintiff. In the Culbertson case, Coon and Culbertson were partners engaged in the ranching business. Culbertson had four sons. Coon desired to end the partnership. The bulk of the partnership herd of cattle was sold. Culbertson offered to purchase the interest of Coon in the remaining cattle. Coon accepted the offer upon condition that Culbertson sell an undivided one-half interest in the herd to his sons. Culbertson bought the interest of Coon in the remaining cattle and two days later sold an undivided one-half interest in them to his sons. The sons gave their father a promissory note for the purchase price. Later a new note was executed to replace the earlier one. The second note was paid. The form of payment was credit for overcharge, gifts from the father, and one-half of a loan procured by the partnership. The loan procured by the partnership was repaid with proceeds from the operation of the ranch. The partnership agreement between Culbertson and the sons was oral. A bank account was opened in the partnership name of Culbertson and Sons, upon which the father, the sons, and a bookkeeper could check. At the time of the formation of the partnership, the oldest son was 24 years of age, was married, lived on the ranch, and for two years had been foreman under the Coon and Culbertson partnership. He was a college graduate, was paid a salary, and was furnished board

---

1. See, also, Pence v. United States, 316 U. S. 332, 339, 340, 62 S.Ct. 1080, 86 L.Ed. 1510; Alabama Title & Trust Co. v. Mill-sap, 5 Cir., 71 F.2d 518, 520; San Francisco Ass'n for Blind v. Industrial Aid, 8 Cir., 152 F.2d 532, 536.

and lodging for himself and wife. After the formation of the partnership between the father and sons, he continued to receive such wage and board and lodging until he entered the army. The second son was 22 years of age, was married, and he finished college during the first year of the partnership. He went directly into the army following his graduation and did not render any service to the partnership during the two taxable years in question. The two younger sons were 18 and 16 years old, respectively. They went to school in the winter and worked on the ranch in the summer. A partnership return was filed for each of the two taxable years in question. The Commissioner of Internal Revenue refused to treat the partnership as effective for tax purposes. The Tax Court sustained the action of the Commissioner. The Court of Appeals reversed the decision of the Tax Court, 5 Cir., 168 F.2d 979. It was the view of the Court of Appeals that there was no evidence except that showing that the partnership was entered into validly and in good faith, without any idea, purpose, or thought of tax consequences. The Supreme Court reversed the Court of Appeals. While there was no dispute in the evidence in respect to doing the things and taking the steps outlined, the court said that the test of the transaction concerning tax consequences was whether the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. The court further said that if upon consideration of all the facts it was found that the partners joined together in good faith to conduct the business, having agreed that the services or capital to be contributed presently by each was of such value to the partnership that the contributor should participate in the distribution of the profits, that was sufficient. And the proceeding was remanded to the Tax Court for a determination of the issue of fact whether the father and sons in good faith and acting with a business purpose intended to join together in the present conduct of the ranching enterprise. There, it was the function of the Tax Court to determine that pivotal issue of fact and the proceeding was returned to that court for the purpose of determining it and for further proceedings.

Here, these facts were shown upon the trial of the case. John R. Davis, Leslie E. Davis, and Rees T. Davis, Jr., were brothers; and prior to 1943, they were associated together as general partners with equal interests in the ownership and conduct of a floral business. On January 1, 1943, a written instrument was executed which purported to create a limited partnership. It provided among other things that the partnership should exist for a term of fifty years but might be dissolved prior to the expiration of that period by mutual agreement of the general partners or the survivors of them; that upon the death, retirement, or insanity of a general partner, the surviving partners or partner should have the right to conduct the partnership business; that the wives of the three brothers should be limited partners; that Estella A. Davis, a limited partner, had contributed to the partnership the sum of $12,500 in cash; that Elizabeth S. Davis had contributed a like amount; that Lucy R. Davis had contributed $4,166.67; that none of the limited partners had agreed to make or should be liable for any additional contributions; that the limited partners should receive certain specified fractional parts of the net profits of the business; that a limited partner should be entitled to the return of her contribution upon the expiration of the term of the partnership, upon the dissolution of the partnership by mutual consent of the general partners, or the survivors of them, or upon the consent of all of the other members of the partnership, both general and limited; that the limited partners should not have the right to demand and receive property other than cash in return for their respective contributions; and that the general partners should receive reasonable compensation for their services, and in addition thereto should share prorata in a specified ratio in the net income of the partnership. At the time of the formation of the limited partnership, the three brothers gave to their wives certain sums of money from the capital assets of the partnership with the understanding among all of them that it was to be put back into the partnership. John R. Davis gave

his wife $12,500 which had been withdrawn from the capital assets of the partnership with that understanding between them. She deposited the money in an account in her name in a bank. A few days later—as contemplated from the outset—she drew her check on the account in favor of the partnership. The check was paid on presentation and in that manner the money went into the capital structure of the partnership. A second limited partnership agreement was executed sometime late in 1945, to become effective January 1, 1946. One of the major purposes of the agreement was to bring John R. Davis, Jr., son of John R. Davis and Estella A. Davis, into the partnership as a general partner. His interest was acquired by a gift from his mother in the sum of $4,166.66 and a like gift from his father. The instrument recited that the contribution of Estella A. Davis to the partnership was $8,333.33, and that she should receive disbursements representing a specified fractional part of the net profits of the partnership. For present purposes, the other provisions in the instrument were substantially like those in its predecessor. Following the execution of the first agreement and extending through the year 1946, distributions were made to Estella A. Davis. She deposited most of them in the bank account in her name. A few of them were cashed and the currency placed in a lock box or safe. John R. Davis did not draw checks on the account or use any of the money. In 1946, checks were paid to Estella A. Davis in the aggregate amount of $19,200. While in form, the partnership interest of the wife was purchased with gift capital, in view of the understanding between the two spouses the substance and reality of the transaction was that money was withdrawn from the capital assets of the partnership and returned thereto with no significant change in the economic situation. In reality, the wife made no contribution to the capital structure of the business. She devoted no time or effort to the conduct of the business. She was virtually without information concerning the business. And she had no voice in it. Taking into consideration all of the facts and circumstances and viewing them in their totality, reasonable men might easily reach different conclusions in respect to the intent and purpose of John R. Davis and Estella A. Davis in her coming into the partnership. One reasonably minded person might reach the conclusion that in good faith and acting with a business purpose they intended to join together in respect to the conduct of the business. Another reasonably minded person with equally sustainable basis might reach the conclusion that there was no business purpose in the inclusion of the wife in the partnership, and that the real intent and purpose was merely to spread into different hands the income derived from the profits of the business with a resulting diminution in tax liability. And since reasonably minded persons might reach different conclusions in respect to the real underlying intent and purpose of the spouses in respect to the wife coming into the partnership, the question should have been submitted to the jury. Commissioner v. Culbertson, supra.

The recent case of Toor v. Westover, 9 Cir., 200 F.2d 713, lends support to the view that the evidence and the inferences fairly to be drawn from it presented an issue of facts as to whether Davis and his wife in good faith and acting with a business purpose intended to join together as bona fide partners in the business enterprise, or whether the underlying purpose was to spread into different hands the income derived from the business with resulting decrease in liability for taxes. There, Toor and his wife transferred to a bank certain property in trust for their minor children. The trust instrument limited the bank to investment of trust funds in businesses in which Toor was a partner or principal stockholder, or in specified securities. At the same time, Toor and the bank entered into articles of limited partnership which provided that Toor should be a general partner and the bank a limited partner; that the general partner should have full charge and control of all partnership business; and that the interest of the limited partner should not be transferable. Books were properly set up on a partnership basis. The books adequately disclosed a partnership relationship between the partners. And the parties adhered in all respects to the terms

of the agreement and the provisions of the limited partnership act of the state. The suit was to recover a refund of taxes assessed against Toor and his wife on the basis that the arrangement was not effective taxwise. The trial court treated the case as presenting an issue of fact as to whether in the transaction the parties intended in good faith and acting with a business purpose to join together in the conduct of a partnership enterprise. The trial court found that crucial issue of fact against Toor and his wife. And the finding was upheld on appeal. While not controlling, that case is persuasive. True, in Marcus v. Commissioner, 5 Cir., 201 F.2d 850, a case somewhat similar to this one, it was held that there was no issue of fact and that the Tax Court erred in finding as a fact that the petitioners did not in good faith form a valid limited partnership with their wives which was effective for tax purposes. After taking that case into consideration, it is impossible for me to escape the conclusion that Commissioner of Internal Revenue v. Culbertson, supra, is applicable and controlling here.

I would reverse the judgment and remand the cause with directions to submit the issue of fact to the jury.