Ralph **NICHOLAS**, Collector of Internal Revenue for the District of Colorado, Appellant,

v.

Tony C. **TIMPTE**, Appellee.

No. 4867.

United States Court of Appeals Tenth Circuit.

Oct. 26, 1954.

Rehearing Denied Nov. 20, 1954.

Phillips, Chief Judge, dissented.

Walter Akerman, Jr., Washington, D. C. (Donald E. Kelley, U. S. Atty., Denver, Colo., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, and Edmund C. Grainger, Jr., Sp. Assts. to Atty. Gen., on the brief), for appellant.

Forrest C. Northcutt, Denver, Colo., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Tony C. Timpte, herein referred to as the taxpayer, brought this action to recover on a claim for refund of income taxes for the years 1944 and 1945. The action involved the validity of a partnership for income tax purposes, entered into between the taxpayer and his wife. The trial court, believing that our case, Nicholas v. Davis, 10 Cir., 204 F.2d 200, controlled, directed a verdict for the taxpayer, and entered judgment for the amount he sought. The sole question presented by this appeal is whether the trial court erred in not submitting to the jury the issue of whether the taxpayer and his wife, in good faith and acting with a business purpose, intended to join together as partners in a business enterprise.

For many years prior to 1943, the taxpayer and his cousin were partners engaged in the business of manufacturing truck trailers, semi-trailers and trailer bodies, and in jobbing trailer accessories.

The business was the outgrowth of a blacksmith, buggy and carriage business started in 1884 by the fathers of the partners. In October, 1943, the taxpayer purchased the interest of his cousin for $90,000. At that time, the business of the partnership had greatly accelerated due to war contracts. The profits were increasing rapidly. In 1940, the profits were approximately $16,000; in 1941, $30,000; in 1942, $54,000; and in 1943, the net profits before taxes, were over $273,000, more than $160,000 of which was earned in the last six months. The 1943 earnings placed the taxpayer in the eighty percent income tax bracket.

Shortly after the taxpayer acquired the entire business, for the purpose of conveying a stock interest to his wife and some employees, he gave consideration to incorporating, and consulted his attorney and accountants. They advised him against incorporating because of the extremely high corporate taxes then existing, and recommended that he transfer a portion of his assets to his wife and create a limited partnership.[1] He was advised that he could make a gift to his wife of $33,000 without having to pay a federal gift tax. The taxpayer then instructed his attorney to proceed with the preparation of a limited partnership agreement wherein he would be the general partner and his wife a limited partner. Mrs. Timpte was advised of this action and consented to it. The necessary papers were prepared and executed by the taxpayer and his wife to create a limited partnership under the laws of Colorado, to be effective January 1, 1944. On December 29, 1943, the taxpayer gave his wife a partnership check for $33,000. She deposited it in a bank and immediately withdrew it for the purpose of paying for her one-third interest as provided for in the limited partnership articles. This sum went back into the business. The partnership was in existence during 1944 and 1945. During these years the business continued as before under the management and control of the taxpayer. In 1946, according to the testimony, the tax situation became more favorable to corporations, and the business was incorporated. The wife was issued stock equal to the value of her capital and accumulated earnings as shown by the books of the partnership.

During the two years that the partnership existed, the wife rendered no services to the partnership. She did not actively participate in any of its business except the signing of certain papers which were required. The articles of partnership gave her no right to control the business in any way. The distribution of profits was largely under the control of the taxpayer.[2] She did not re-

---

[1]. The evidence indicates that to a large extent the changes to be made in the business structure were controlled by tax consequences. The taxpayer testified:

"Q. Were you then advised that it was a good time to form a limited partnership, as far as Federal taxes were concerned?—A. Yes, sir.

"Q. And in 1946 when you then formed a corporation were you advised that it was a good time to form a corporation for tax purposes?—A. Correct.

"Q. So that the choice of your form of business organization was dictated by tax motives largely?—A. To an extent, yes, sir."

Upon the same subject Mrs. Timpte testified as follows:

"Q. Now, both Mr. Timpte and yourself, Mrs. Timpte, have used the phrase 'get our house in order' when referring to the discussions with respect to the formation of a corporation or a partnership commencing in 1943. Did you understand that the formation of a partnership was only a temporary measure for getting the house in order, until such time as you could incorporate?—A. I think so.

"Q. Did you understand that the reason at that time for forming a partnership was because it would be wise, as far as Federal taxes were concerned, to form a corporation at that time?—A. We were advised that way.

"Q. But that it would be, as an interim measure, wise to form a partnership until those excess corporate taxes were repealed?—A. I think that's right."

[2]. The articles of partnership contained this provision:

"Annually, at the close of the fiscal year of the firm, and at such other times as the general partner may decide, the

quest that there be a distribution of profits.[3] The only money charged to the wife's account, except for one item of $3,000, was for income taxes which the partnership paid on her share of the earnings. The taxpayer first stated that the $3,000 was withdrawn for the purpose of purchasing bonds for his wife. It developed, however, that the sum was actually used to make a payment on a home for a key employee, the title to which was taken in the name of the taxpayer. So far as the operation of the business was concerned, there was no change whatever in its operation after the execution of the partnership agreement. There was testimony that at the time of the execution of the partnership agreement, the net worth of the business was about $100,000. However, a Dun and Bradstreet report made from information furnished by the taxpayer showed the net worth to be $193,689.

 In this kind of case, the question to be determined is whether the parties "in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." The same test as to the good faith and intention of the parties applies in a limited partnership case. In other words, the determining factor is the reality of the partnership within the meaning of the Federal Revenue Laws.

Generally, the intention of the parties is a question of fact to be determined from all the facts and circumstances which may throw light upon the true intent and good faith of the parties. Commissioner v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 93 L.Ed. 1659; Jones v. Baker, 10 Cir., 189 F.2d 842. It has been repeatedly held that a husband and wife may in good faith engage in business as partners, but where such transactions are calculated to reduce family taxes, they should be subjected to special scrutiny. Commissioner v. Tower, 327 U.S. 280, 289, 66 S.Ct. 532, 90 L.Ed. 670; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Bratton v. Commissioner, 10 Cir., 193 F.2d 416; Eckhard v. Commissioner, 10 Cir., 182 F.2d 547. The Culbertson case recognized that the donee of an intra-family gift might under proper circumstances become a partner through the investment of that gift in the family partnership, but it was indicated that this would be a circumstance to be considered in determining the fact of whether the transaction was consummated in good faith. In such arrangements it is only when there is controlling, positive and uncontradicted evidence, and no circumstance casts doubt upon its verity, a condition which a majority of the court thought existed in the Davis case, that it may be said that there is no issue of fact.[4]

general partner shall take account of the operations of the firm for the preceding period, the drawings of the partners, the amount of reserves to be retained in the business, and shall thereupon determine the amount, if any, in excess thereof. Such excess amount of profits shall be designated as 'Divisible Surplus and Profits,' and shall be credited to the partners, general and limited, in proportion to their interest in the firm, and shall be subject to withdrawal."

3. The partnership had a loan agreement with a Denver bank which contained this provision:

"By executing this agreement, the general and limited partners hereby waive the right to receive any distributions of surplus or profits other than those herein expressly permitted, whether or not said general or limited partner might be entitled to receive additional distribu-

tions under the provisions of the 'Articles of Limited Partnership.' "

The record does not disclose when this loan was paid.

4. In the Davis case, supra [204 F.2d 202], it was said:

"When controlling, positive, and uncontradicted evidence is introduced, and when it is unimpeached by cross-examination or otherwise, is not inherently improper [improbable], and no circumstance reflected on the record casts doubt on its verity, then under the principles laid down in Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 215–220, 51 S.Ct. 453, 75 L.Ed. 983, it may not be disregarded, even though adduced from interested witnesses, and no question of credibility or issue of fact is presented for determination by the jury." (Footnote omitted.)

■ We think this case is distinguishable from the Davis case. There, the wife's share of the partnership profits was withdrawn from the business and she had complete control over them. They were not thereafter used by the business or for the joint purpose of the husband and wife. In addition, the court pointed out that one of the principal purposes of the partnership was to provide a method whereby the business could be continued as a family enterprise, and at the same time make provision for a daughter who was not to own any of the business. The sufficiency of the consideration was not questioned. There was no suggestion in that case that the tax consequences were an important factor. Here, there is evidence that tax purposes motivated the creation of the partnership, and there is a question as to the adequacy of the consideration paid for the wife's interest. When the $33,000 was paid for a one-third interest, the business had earnings within the last six months of over $160,000 and it had contracts from which large earnings in the future could be anticipated. The amount of the gift to the wife was the exact amount which could be given without paying a Federal gift tax. The wife never actually received into her possession any of the profits. Although distribution of profits was limited by a loan agreement with a Denver bank, an amount of $3,000 was charged to her account and used to make a payment on a house, the title of which was taken in the taxpayer's name. When the business was incorporated, the wife left all of her earnings in the business and took stock and the husband managed and controlled the business as before. From all the circumstances in the case, a jury might rightfully reach the conclusion that there was no business purpose for the inclusion of the wife in the partnership, and that the real intent was to reduce the tax liability by dividing the income of the business between the taxpayer and his wife.

The judgment is reversed, and the case is remanded for a new trial.

PHILLIPS, Chief Judge (dissenting).

Two disconnected cases are rarely precisely alike. The instant case differs from Nicholas v. Davis, 10 Cir., 204 F.2d 200 in certain particulars. Those differences, in my opinion, on this record, are immaterial. For many years prior to 1943, Tony C. Timpte [1] and his cousin were partners engaged in the business of manufacturing truck trailers, semi-trailers and trailer bodies and jobbing trailer accessories. The business was established by the taxpayer's father and his uncle in 1884. About 1917, the taxpayer and his cousin purchased the interests of their respective fathers. Thereafter, and until 1943, the taxpayer and his cousin continued the enterprise as a partnership. In the fall of 1942 the taxpayer's cousin suffered a stroke, and upon the advice of his doctor withdrew from active participation in the business. In October, 1943, the taxpayer purchased his cousin's interest in the business. The taxpayer became concerned with the perpetuation of the business, in the event he should become incapacitated or die. He approached several of his key employees to ascertain whether they would be interested in buying stock in a corporation to take over the business. The taxpayer, in addition to reasons of concern with respect to the future of the business, was motivated by a desire to provide for the security of his wife, in the event of his sickness or death. The employees reacted favorably to the proposal and the taxpayer decided to incorporate the business, sell stock to his key employees, and make a gift to his wife of approximately one-third of the stock in the proposed corporation. At that time, tax advantages were not in his mind. He had no thought or purpose to avoid taxes by transferring his sole ownership of the business to a corporate entity. He felt that under the existing circumstances, it would be advantageous to himself,

1. Hereinafter called the taxpayer.

his wife, and the perpetuity of the business to change it from sole ownership by him to a corporate ownership.

It was not until he had consulted his attorney with respect to incorporation that the question of tax advantages came into the picture. He was advised that there would be tax advantages in partnership ownership over corporate ownership. Either form of ownership would accomplish the original purposes of his plan. The change in the plan was not from sole ownership in him to partnership ownership for the purpose of avoiding taxes, but from a proposed corporate entity to a partnership entity because of the tax advantages which a partnership entity would have over a corporate entity. Later, when changes in the tax laws removed the tax advantages of partnership ownership over corporate ownership, he incorporated the business and stock was issued to his wife and his key employees, as well as to himself, fully carrying out his original plan.

It seems clear to me, therefore, that he was not activated by a motive of tax avoidance when he made a gift to his wife through which she originally acquired a one-third interest in the partnership and ultimately through stock ownership a one-third interest in the corporation.

It is true that the wife did not receive any substantial amount of the accrued partnership earnings during its existence. Neither did the taxpayer. That was because the partnership was engaged in carrying out large contracts with the Government and required large bank borrowings in order to do so. The bank imposed a condition that no profits of the partnership should be distributed until the loan was paid. After the loan was paid off, the wife received her full interest in the assets and accumulated profits of the partnership upon its dissolution, and with them purchased an interest in the new corporation.

There could be no doubt that the wife was legally entitled to her share of the partnership assets and the accumulated earnings, on dissolution. The husband did not control the distribution of profits during the continuance of the bank loan. Neither were they distributed to his personal advantage or for family expenses. Distribution was precluded by the terms of the bank loan. The wife executed the note to the bank along with her husband and became personally liable for that debt.

It is true that the partnership was a limited one and management was vested in the taxpayer as general partner. However, what had been accumulated by the taxpayer at the time the partnership was formed, was largely the result of the joint efforts of the taxpayer and his wife. Throughout their married life and during the existence of the partnership, he followed the custom of discussing important business matters with his wife. He testified that as the result of such discussions, she was very helpful to him in the conduct of his business. There can be no doubt that she exerted an important influence with respect to management problems and policies, both before and during the existence of the partnership.

It is my opinion that the uncontroverted evidence and the inferences reasonably deductible therefrom clearly establish that the formation of the partnership was activated by a bona fide business purpose, and that the gift to the wife was not actuated by a purpose to avoid taxes.

Since such evidence was controlling, positive, and uncontradicted, was unimpeached by cross-examination or otherwise, was not inherently improbable, and no circumstance reflected in the record cast doubt on its verity, under the principles laid down in Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 215–220, 51 S.Ct. 453, 75 L.Ed. 983 and Nicholas v. Davis, 10 Cir., 204 F.2d 200, 202, it is my opinion that the trial court properly directed a verdict for the taxpayer. Accordingly, I would affirm the judgment.