**UNITED STATES PUMICE SUPPLY COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17737.**

United States Court of Appeals Ninth Circuit.

Oct. 11, 1962.

Rehearing Denied Nov. 29, 1962.

Thomas E. O'Sullivan, Beverly Hills, Cal., for appellant (petitioner).

Louis F. Overdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, and Robert L. Waters, Attys., Dept. of Justice, Tax Division, Washington, D. C., and Crane Hauser, Chief Counsel, I. R. S., Washington, D. C., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and SOLOMON, District Judge.

BARNES, Circuit Judge.

The United States Pumice Supply Company, a corporation, (hereinafter referred to as the "Company" or "petitioner") asserts on this appeal that the Tax Court erred in holding that its product was pumice, and that the Company was required to compute its statutory depletion at five per cent, under § 613(b) (5) of the Internal Revenue Code of 1954 (26 U.S.C. § 613), rather than the fifteen per cent depletion allowed for "dimension stone," under § 613(b) (6) of the same 1954 Code. The taxable year involved was that ending November 30, 1955. The amount involved was $17,003.54. The Tax Court had jurisdiction to redetermine petitioner's alleged deficiency under § 6213 of the Internal Revenue Code of 1954. Jurisdiction here rests on § 7482 of the Internal Revenue Code of 1954. The opinion appears in 36 T.C. 1160.

The Tax Court made the following Findings of Fact:

" * * *

"Deposits of pumice originate in two ways. Pumice may be blasted or blown out of a volcano into the air, and carried varied distances before settling on the earth, or it may ooze or flow from a fissure or crater of a volcano along the slopes or adjoining area. Pumice may be found in the form of little pebbles, large pieces, or in masses called flows. There are layers of pumice and layers of hard glass. Many gradations have been observed and found from time to time. Pumice of a kind is found in great quantities in the earth's crust.

"In petrology, the science of rocks in its broad aspects, pumice is an excessively cellular glassy lava generally of the composition of rhyolite, a sort of volcanic froth. Its color is generally whitish or light gray, and it is very light and will float in water.

"Common uses of pumice are as a light weight aggregate in the making of concrete and cement, as an abrasive and as a scouring agent. It is also used for many other purposes.

"Until the latter part of 1943, petitioner's operations were in an area in California known as Blind Springs. * * *
* * *

"In the latter part of 1943, petitioner acquired an open-face pit or quarry of a volcanic deposit, and began mining its present product. This deposit was not in the form of particles which had been blown from the volcano, but was in the form of a flow of lava from the crater or a fissure or fissures of the volcano. The deposit is located about 17 miles from Lee Vining, a small town located on Mono Lake in Mono County, California, approximately 340 miles north of Los Angeles, on Highway 395. It is about 50 miles from the Blind Springs deposit. Petitioner's mill is located at Lee Vining. * *

"The major part of petitioner's operations is at the deposit near Lee Vining. The deposit is known as the Frank Sam Mine, but petitioner refers to it as the Lee Vining mine. The material is broken loose by crow-

bars and a bulldozer. The larger pieces are pushed to loading platforms, hand sorted, and loaded on trucks by means of a skiploader or conveyor belts. The trucks then haul the material to the mill, which consists of a shed and several circular saws. During the taxable year petitioner cut the usable material into rectangular blocks of two sizes, the larger size being 4 x 4 x 8 inches and the smaller 3 x 3 x 6 inches. The blocks were packaged in cardboard cartons, and were sold under the trade name of Grillmaster. In connection with the petitioner's business, the blocks are referred to as grillstones. Some of the material that had hard streaks in it was not suitable for grillstones, and was not so used. The same was true of the pieces that were not of sufficient shape or size to be cut to the 3 x 3 x 6 inch dimensions.

"Petitioner sells its products to restaurant supply dealers. The grillstones are used for cleaning restaurant grills. The blocks consist of minute glass particles which through a rubbing or scraping motion cut burnt carbon from the grill, without injuring the metal of the grill. The blocks are also permeable which permits them to absorb grease and have a lubricating quality.

"The blocks produced and sold by petitioner are grayish in color and are very light in weight, and float in water, all of which are natural characteristics of pumice. The index of refraction of petitioner's products is 1.495 plus or minus .005, and indicates that the product is of the composition of rhyolite or rhyolitic rock, which is consistent with an indentification thereof as pumice. * * *

"On its income tax returns for the fiscal years ended November 30, 1950, 1951, 1952, 1952 amended, and 1953, petitioner declared that its principal business activity was 'mining and manufacturing pumice.'

"The returns for 1950, 1951 and 1952 show that petitioner had inventories of pumice.

"On its return for the taxable year ended November 30, 1955, petitioner listed its principal business activity as mining and cutting dimension stone. * * * *"

The Tax Court concluded that the material the Company mined in 1955 "was pumice." Petitioner urges that this finding has no sufficient support in the evidence. The Company's four experts described the material as "dimension stone."

The government's expert, De Grosse, testified only that he had taken two thin slices of respondent's Exhibit C (one taken parallel to the structure and one at right angles). These were marked 1-1 and 1-2 (Respondent's Ex. I). He testified the index of refraction of Exhibit C was 1.495 plus or minus .005.

The government's expert Tunell (Professor of Geology at the University of California at Los Angeles), then testified Exhibit C "conforms to the generally accepted petrologist's definition of pumice," i.e., it was:

"An excessively cellular glassy lava generally of the composition of rhyolite, a sort of volcanic froth. Its color is generally whitish or light grey. It is very light and will float on water."

Placed in a pail of water in the courtroom, Exhibit C floated. The witness then identified Exhibits J and K as magnified pictures of Respondent's Exhibit I; that the index of refraction mentioned, *supra,* indicated the walls between the pumice were rhyolitic rock.

Petitioner concedes in its brief and conceded at the trial, and on oral argument, that it "had not tried" or "had made no particular effort" to prove its product was *not* pumice. It argues that it is "dimension stone" whether pumice or not.

■■ But petitioner states that despite its lack of effort to prove the material produced was not pumice, there is

evidence in the record (from its own witnesses, Fay and King (non-experts) and expert Schroter) that "casts substantial doubt [upon the fact] that the product is pumice." [1] If we concede that there exists more than "substantial doubt," and even if there was a clear conflict in the evidence, the trial court has the right and power to decide what testimony he believes, and what he discards. The tes-

timony of an expert witness is no better than the convincing nature of his reasons for his testimony. His opinion evidence becomes a question of fact, here decided adversely to petitioner. We have no power to rejudge the matter, or to second guess the trier of fact.

Section 613 of the Internal Revenue Code of 1954, in material part, is set forth in the margin.[2]

---

1. As an example, petitioner states the government's expert testified pumice was common; the petitioner's non-experts testified products from its deposits are extremely rare. What evidentiary value this may have is extremely argumentative.

2. "Internal Revenue Code of 1954:
"Sec. 613. Percentage Depletion.
"(a) General rule.—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion). In no case shall the allowance for depletion under section 611 be less than it would be if computed without reference to this section.
"(b) Percentage depletion rates.—The mines, wells, and other natural deposits, and the percentages, referred to in subsection (a) are as follows:
"(1) 27½ percent—oil and gas wells.
"(2) 23 percent—
"(A) sulfur and uranium; and
"(B) if from deposits in the United States—anorthosite (to the extent that alumina and aluminum compounds are extracted therefrom), asbestos, bauxite, beryl, celestite, chromite, corundum, fluorspar, graphite, ilmenite, kyanite, mica, olivine, quartz crystals (radio grade), rutile, block, steatite talc, and zircon, and ores of the following metals: antimony, bismuth, cadmium, cobalt, columbium, lead, lithium, manganese, mercury, nickel, platinum and platinum group metals, tantalum, thorium, tin, titanium, tungsten, vanadium, and zinc.
"(3) 15 percent—
"(A) metal mines (if paragraph (2) (B) does not apply), rock asphalt and vermiculite; and

"(B) if paragraph (5) (B) does not apply, ball clay, bentonite, china clay, sagger clay, and clay used or sold for use for purposes dependent on its refractory properties.
"(4) 10 percent—asbestos (if paragraph (2) (B) does not apply), brucite, coal, lignite, perlite, sodium chloride, and wollastonite.
"(5) 5 percent—
"(A) gravel, mollusk shells (including clam shells and oyster shells), peat, pumice, sand, scoria, shale, and stone, except stone described in paragraph (6);
"(B) clay used, or sold for use, in the manufacture of building or paving brick, drainage and roofing tile, sewer pipe, flower pots, and kindred products; and
"(C) if from brine wells—bromine, calcium chloride, and magnesium chloride.
"(6) 15 percent—all other minerals (including, but not limited to, aplite, barite, borax, calcium carbonates, diatomaceous earth, dolomite, feldspar, fullers earth, garnet, gilsonite, granite, limestone, magnesite, magnesium carbonates, marble, phosphate rock, potash, quartzite, slate, soapstone, stone (used or sold for use by the mine owner or operator as dimension stone or ornamental stone), thenardite, tripoli, trona, and (if paragraph (2) (B) does not apply) bauxite, beryl, flake graphite, fluorspar, lepidolite, mica, spodumene, and talc, including pyrophyllite), except that, unless sold on bid in direct competition with a bona fide bid to sell a mineral listed in paragraph (3), the percentage shall be 5 percent for any such other mineral when used, or sold for use, by the mine owner or operator as rip rap, ballast, road material, rubble, concrete aggregates, or for similar purposes. For purposes of this paragraph, the term 'all other minerals' does not include—
"(A) soil, sod, dirt, turf, water, or mosses; or
(B) minerals from sea water, the air, or similar inexhaustable sources. * * * "
(Emphasis added.)

The material *"pumice"* is specifically mentioned in § 613(b) (5) (A). Also included in § 613(b) (5) (A) is: "stone, except stone described in paragraph (6)." Paragraph (6) includes the description: "stone (used or sold for use by the mine owner or operator as dimension stone or ornamental stone)."

"Pumice" in its ordinary sense, as a noun, is defined as: "a variety of volcanic glass, full of minute cavities and very light, used especially for polishing." "Stone" in its ordinary sense, as a noun, is defined as a small piece of rock. A stone ordinarily does not float; pumice ordinarily does.

That pumice and stone are two different materials, is recognized in § 613. Pumice used or sold as dimension or ornamental stone is not changed thereby from pumice to stone. It is stone *"sold or used* as dimension or ornamental stone" which rates a fifteen per cent depletion base, rather than the ordinary five per cent depletion base for ordinary stone. It is not pumice used or sold as ornamental stone, that gains a fifteen per cent base. The use and purpose of sale of stone may change its tax base—it does not change the substance from stone to pumice or any other substance, or vice versa.

Congress has separated "pumice" from the more general classification of "stone" in one section and provided a specific depreciation rate for it. It cannot be presumed that this distinction is to be overlooked in the next section so as to include "pumice" once again in the general category of "stone" and allow a different rate of depreciation. Where a mineral is specifically provided for at a stated rate of percentage allowance, the specific provision will govern over the allowance provided for a more general classification. This principle was recognized by the Ninth Circuit in Riddell v. Victorville Lime Rock Co., 292 F.2d 427, 433 (1961).

Had Congress intended the interpretation proposed by petitioner, there would have been no reason for distinguishing "pumice" from "stone" in subsection (5) (A).

Secondly, the mere fact that petitioner's product is cut to certain dimensions does not make it "dimension stone" within the meaning of § 613(b) (6). The Senate Finance Committee, in commenting on the dimension stone classification, indicated its understanding of that term by saying:

" 'Dimension stone' means blocks and slabs of natural stone cut to definite shapes and sizes, such as building stone (excluding rubble), monumental stone, paving blocks, curbing and flagging." S.Rep.No. 1622, 83rd Cong., 2d Sess., p. 332, U. S. Code Congressional and Administrative News 1954, p. 4972.

This definition has been embodied in the Regulations. Treas. Reg. § 1.613-2(b) (3). It is clear that the intent of Congress was to provide a higher rate of depreciation for stone cut to particular size for use in various types of construction. Taxpayer's grillstones do not come within this category, and thus the fifteen per cent rate set in subsection (6) cannot be applied to them.

Pumice cannot become something other than pumice, even if sold or used for a purpose other than that to which pumice is ordinarily put. It was used for its usual purpose here to scour carbon and grease off grills. Congress, "in its wisdom," saw fit to make an exception as to certain stone, put to a certain use and sale (as dimensional stone), and placed it in a category different from ordinary stone; but it did *not* see fit to place pumice into two categories, one depending upon its geological nature and the other depending upon its use and sale. The statute is controlling.

Finding no error, we affirm.