**POTTS, DAVIS & COMPANY,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 24026.**

United States Court of Appeals,
Ninth Circuit.

Sept. 29, 1970.

---

Fred M. Taylor, District Judge, dissented.

Peter M. Gunnar (argued), of Gunnar & Johnson, Salem, Or., for appellant.

Stephen H. Hutzelman (argued), Lee A. Jackson, Elmer J. Kelsey, Attys., Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Dept. of Justice, Richard M. Hahn, Chief Counsel Acting, Internal Revenue Service, Washington, D. C., for appellee.

**1224**

Before WRIGHT and KILKENNY, Circuit Judges, and TAYLOR,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The Commissioner of Internal Revenue asserted a deficiency in the income tax of Potts, Davis & Co. (Potts-Davis) in the amount of $3,176.09 resulting from disallowance of depreciation of insurance files claimed during the preceding three fiscal years. The Tax Court (Fay, J.) held that Potts-Davis in the proceeding before it had failed to prove that these files had a determinable useful life and was therefore not entitled to the claimed deductions. We Affirm.

The essential facts as stipulated by the parties and found by the Tax Court are not in dispute. Potts-Davis is an Oregon corporation engaged in the business of selling varied types of insurance. In 1961, Potts-Davis purchased all of the stock of another, related insurance agency (Grabenhorst-Potts). Grabenhorst-Potts was then liquidated and Potts-Davis received all of its assets in a dissolution pursuant to § 334(b) (2) of the Internal Revenue Code of 1954.

Among the assets of Grabenhorst-Potts acquired by Potts-Davis were the files in question. They consisted of 936 active insurance files, each relating to a client. The Tax Court found that they included much information necessary for client service, including:

    (a) correspondence with insurers and insureds;

    (b) claims adjustments;

    (c) property appraisals for fire insurance ratings;

    (d) premium audits;

    (e) premium financing records; and

    (f) Rating Bureau information.

In addition, the Tax Court specifically found that "[t]he files had no value strictly as a list of customers."

Potts-Davis assigned a total value of $23,400 to the files based upon their estimate that $25 was the approximate cost of reproducing each. Having arrived at a value for them, Potts-Davis concluded that the files had a useful life of six years and accordingly claimed ⅙ of the total value ($3,900) as a depreciation deduction pursuant to § 167 of the Internal Revenue Code of 1954.

There is no dispute that this "property" was used by Potts-Davis in its trade or business as required by § 167(a) nor is there any controversy as to the method of depreciation used. In assessing the deficiency, the Commissioner took the two-fold position that (a) the files were not depreciable property within the meaning of § 167 and (b) that if they were depreciable property, they had no determinable useful life upon which to predicate depreciation.

The Tax Court specifically declined to rule as to whether this property was or was not depreciable. Rather, it grounded its decision in favor of the Commissioner on the sole ground that Potts-Davis had not proved that the files have a determinable useful life.

The deduction sought here by Potts-Davis is not obtained as a matter of absolute right, but rather is available as a matter of Congressional grace.[1] In order to avail himself of such a deduction, the taxpayer has the burden of showing that the claimed deductions fall within the statutory provisions which allow for them.[2] This burden on the taxpayer is accompanied by the presumption that the determinations of the Commissioner are correct.[3]

---

\* Hon. Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

1. Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416 (1940).

2. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235–236, 75 S.Ct. 733, 99 L.Ed. 1024 (1955).

3. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

This court has, however, consistently held that the presumption of correctness disappears upon introduction of appropriate evidence by the taxpayer, provided that the evidence thus introduced is sufficient to support a contrary finding.[4] Drawing on these principles, it is apparent that the central controversy here is whether the evidence introduced in the Tax Court by Potts-Davis was sufficient to support a finding contrary to that made by the Commissioner in his initial determination of the deficiency.

Potts-Davis relies heavily upon the fact that the only evidence in the record as to the useful life of the files was testimony on its behalf. It consisted of the testimony of one of its major stockholders, Mr. Davis, and the testimony of another insurance agent, Mr. Denton. Potts-Davis relies heavily on the fact that there were no witnesses or testimony offered by the Commissioner to support his position that the files had no determinable useful life.

We do not believe that the Commissioner is required to come forward with witnesses or testimony in support of his determinations. The Tax Court is not, of course, free to ignore the uncontroverted testimony of the taxpayer[5] but we do not believe that the Commissioner is required to rebut such testimony by his own witnesses. This is particularly true where, as here, the proposition of the Commissioner in assessing the deficiency is a negative one, *i. e.*, that these files had *no* determinable useful life.[6]

While we are in full agreement with those decisions which have ruled that the Tax Court need not necessarily accept the uncontroverted testimony of the taxpayer,[7] we have nonetheless examined the testimony in the record insofar as it relates to the question before us, *i. e.*, the determinable useful life, if any, of the files.

In short, we find that Mr. Davis' testimony[8] is almost wholly conclusory and

---

4. Niederkrome v. Commissioner of Internal Revenue, 266 F.2d 238, 241 (9th Cir. 1958), cert. denied 359 U.S. 945, 79 S.Ct. 725, 3 L.Ed.2d 678 (1959); Lawrence v. Commissioner of Internal Revenue. 143 F.2d 456 (9th Cir. 1944).

5. *See, e. g.*, Nicholas v. Davis, 204 F.2d 200 (10th Cir. 1953).

6. *Cf.* Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733. 35 L.Ed. 501 (1891); Birnbaum v. Commissioner of Internal Revenue, 117 F.2d 395 (7th Cir. 1941).

7. Wood v. Commissioner of Internal Revenue, 338 F.2d 602 (9th Cir. 1964); Birnbaum v. Commissioner of Internal Revenue, 117 F.2d 395 (7th Cir. 1941); Hoefle v. Commissioner of Internal Revenue. 114 F.2d 713 (6th Cir. 1940).

8. The bulk of Mr. Davis' testimony dealt with the details of the transfer from Grabenhorst-Potts to Potts-Davis and the method by which the *value* of these files was arrived at. As to the question of useful life, Mr. Davis' entire testimony follows:

> Q. Mr. Davis, who selected the six-year life on the depreciation used in this case?

> A. Well, we did in our office on the basis that normal policies are written for one, three or five years.

> But there is hardly any policies written for five years, or there have hardly been any policies written for five years for many, many years. There were a few personal lines, fire policies, written like that.

> Automobile policies have to be written for one year in the State of Oregon. All other policies are normally written for three years. They may have annual premium payments. but the policy is for a three-year term.

> We used, basically the information in this file is fairly well used up by the end of that three years, when you make your audit, after you have made the audit at the end of three years, and so forth, but because you do occasionally go back to the preceding policy for information and material, particularly in commercial and professional accounts. We used six years, and I don't think there would be any of this material worth anything after six years. It would be obsolete and immaterial.

> Q. In other words, the condition of the client changes sufficiently in six

offers little in the way of reasons to support the taxpayer's own determination that the files had a useful life of six years. We find no testimony which offers any meaningful explanation of precisely why the files became "obsolete" and why they did so in the six-year period claimed by Potts-Davis.

■ At oral argument, counsel for Potts-Davis offered several explanations as to why this period was chosen but these reasons are not to be found in the record and could not therefore, have been considered by the Tax Court. We cannot go beyond the record before the court below in deciding this appeal.[9]

We appreciate the difficulty facing the taxpayer who must assign some realistic, meaningful evaluation to the life of an asset for which the depreciation deduction is sought. Viewed however from a lenient standard of proof, we do not think that the testimony of Mr. Davis was sufficient to warrant a contrary finding by the Tax Court. Indeed, Mr. Davis' inability to furnish any cogent reasons for his conclusion that these files became obsolete in six years tends to substantiate the Commissioner's position that the files, in fact, had no determinable useful life.

Finally, Potts-Davis points out that the testimony of Mr. Davis was not, in fact, uncorroborated. The allegedly corroborative testimony is that of Mr. Denton, a partner in a life insurance agency in Salem which was a competitor of Potts-Davis. We have little doubt as to his expertise in view of his many years of experience in the insurance business in Oregon and elsewhere.

■ But the testimony of an expert witness is no better than the convincing nature of the reasons offered in support of his testimony.[10] Mr. Denton's testimony[11] as to the determinable useful life of these files completely lacks any reasons in support of Mr. Davis' conclusions. Insofar as this question is concerned, Mr. Denton's sole testimony was that he had "heard Mr. Davis's testimony about the use of insurance records and files" and that he concurred "generally with the statement as Mr. Davis made it."

We are unable to conclude that a general concurrence of this type is sufficient to constitute meaningful corroboration of the testimony of an interested party. This is particularly so in this controversy. Mr. Davis' "testimony" occupies 42 pages of the record. Only one page deals with the question of the useful life of the files and how it was selected. Mr. Denton's allegedly corroborative statement does not refer specifically to this or any other portion of Mr. Davis' testimony. We conclude that Mr. Denton's testimony added little, if anything, to the position of Potts-Davis before the Tax Court.

Potts-Davis recognizes the deficiency in Mr. Denton's testimony. In their brief, they suggest that the lack of defin-

---

years to render it obsolete, is that correct?
A. Appraisals and cost of living that affect all this, very definitely. [R. 39—40].

9. See. e. g., Commissioner of Internal Revenue v. Belridge Oil Co., 267 F.2d 291 (9th Cir. 1959); Harbor Plywood Corp. v. Commissioner of Internal Revenue, 143 F.2d 780 (9th Cir. 1944).

10. United States Pumice Supply Co. v. Commissioner of Internal Revenue. 308 F.2d 766, 769 (9th Cir. 1962).

11. After having established his credentials and lack of interest in Potts-Davis, Mr. Denton testified as follows:

Q. You heard Mr. Davis's testimony about the use of insurance records and files, did you not?
A. Yes, I did.
Q. Would you add or correct any of that testimony before adopting it as your own?
A. I concur generally with the statement as Mr. Davis has made it.

I might observe, if it is permitted, that the ordinary insurance business could be handled from an expiration record, but to do a professional insurance job, and service particularly commercial accounts, you must have all of these allied records, which are invaluable. [R. 61].

itive testimony on the part of Mr. Denton resulted from "the tight docket of the court" and that Mr. Denton was not asked to testify at length "for the convenience of the court." We cannot, of course, speculate as to what support Mr. Denton might have given had he been examined in detail on this point but rather are confined to the record made by Potts-Davis before the Tax Court. For whatever reasons, we are forced to conclude that Mr. Denton's testimony fails to rise to the status of meaningful corroboration of the conclusory testimony of Mr. Davis on the point in question.

After a careful review of this record, we are unable to conclude that the Tax Court which heard the testimony and observed the demeanor of the witnesses was clearly erroneous in its determination that Potts-Davis had not carried its burden of proof in establishing its claimed right to the deduction.[12]

Affirmed.

FRED M. TAYLOR, District Judge (dissenting):

The crucial question presented in this case is whether the tax court was clearly erroneous in finding that "petitioner has not proved that the files have a determinable useful life." The uncontradicted evidence in the record is that the files and records were useful in the insurance business of petitioner for a period of three to five years and that they would become worthless and obsolete at the end of six years. This was in effect the testimony of Mr. Davis, a major stockholder of petitioner and an experienced insurance man, which testimony was not challenged on cross-examination and was corroborated by Mr. Denton, an expert in the insurance business. Furthermore, there was considerable testimony in regard to the use of the files by petitioner in its business for the period of time before they became obsolete. It was stipulated by the parties that the files and records acquired by petitioner were assets and the value assigned to them by petitioner was not in issue.

The tax court held that the evidence of useful life offered by the taxpayer did not have sufficient probative value to overcome or rebut the presumption of correctness of the Commissioner's determination, on the basis that such evidence was "very scant," "vague," and "conclusory." The majority agrees that the tax court is not bound to accept the testimony of an interested party even though that testimony was uncontroverted.

I agree with the majority that this court has consistently held that the Commissioner's determinations are presumed correct but that the presumption disappears upon introduction of appropriate evidence by the taxpayer sufficient to support a contrary finding. I must and do disagree with the majority that the uncontradicted evidence in this case was insufficient to overcome such presumption and to support a contrary finding. I believe the record is sufficient to support a finding in regard to the useful life of the files and that it was error not to make such a finding. It is difficult for me to understand what further evidence was necessary to be introduced by the taxpayer to overcome the presumption since no contrary evidence was offered. The testimony of Mr. Davis, although brief, was positive and to the point that the files were useful and valuable in the business, that their utility declined over a period of three to five years, and that they became obsolete after six years because changes in appraisal values, cost of living, and the general situation of the policy holder render the information valueless after that period. The witness therefore stated more than a mere "conclusion" that the files had a six year life, in that he advanced factual

---

12. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed. 2d 1218 (1960).

explanations and reasons for the six year period chosen.

The majority opinion cites the holding of this court in Wood v. Commissioner of Internal Revenue, 338 F.2d 602 (9th Cir. 1964), for the proposition that the tax court is not required to accept or believe the uncontroverted evidence offered by the taxpayer. While I do not dispute the validity of the proposition stated or the numerous authorities in support thereof, I believe that the rule is inapposite here. The rule was first clearly stated in Quock Ting v. United States, 140 U.S. 417, 420–421, 11 S.Ct. 733, 734, 35 L.Ed. 501 (1891), cited by the majority here, and quoted with approval by this court in Factor v. Commissioner of Internal Revenue, 281 F.2d 100 (9th Cir. 1960). The Supreme Court there stated that:

> *"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court;* but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given his statements, although there be no adverse verbal testimony adduced." [Emphasis added.]

The present case falls within none of the exceptions enumerated. The testimony here is neither inherently improbable nor self contradictory, as it clearly was in Quock Ting v. United States, supra, nor are there significant omissions in the testimony, as for example, in Birnbaum v. Commissioner of Internal Revenue, 117 F.2d 395 (7th Cir. 1941).

The sole possible reason for discrediting the testimony in this case is the demeanor of the witness, as the majority suggests in citing Wood v. Commissioner of Internal Revenue, supra. While the attitudes of a witness cannot be made a part of the record, and therefore the evaluation of demeanor is left exclusively to the trial court, there is nothing in this record to indicate that the tax court tended to discredit the witness's testimony because of his demeanor, or because the testimony lacked sincerity or candor. On the contrary, it appears that the tax court's finding of insufficiency was predicated on the evidence itself, and not on the manner of its presentation. In my view, therefore, there is "no circumstance in the record which casts doubt on the verity" of the uncontroverted evidence offered by the taxpayer regarding the useful life of the files. Perlmutter v. Commissioner of Internal Revenue, 373 F.2d 45 (10th Cir. 1967); Nicholas v. Davis, 204 F.2d 200 (10th Cir. 1953). The fact alone that the witness has an interest in the subject matter does not justify disregarding his otherwise positive and uncontradicted testimony. Southeastern Canteen Co. v. Commissioner of Internal Revenue, 410 F.2d 615 (6th Cir. 1969); Stafos v. Missouri Pac. R. Co., 367 F.2d 314 (10th Cir. 1966).

This court in Niederkrome v. Commissioner of Internal Revenue, 266 F.2d 238, 241 (9th Cir. 1958) stated the rule to be that:

> "We have consistently held that a determination by the Commissioner raises a presumption of correctness *which disappears once evidence which would support a contrary finding has been adduced in the trial of a contested issue."* [Emphasis added]

I am convinced that the evidence introduced by taxpayer was sufficient to comply with this rule. With the resulting disappearance of the presumption of correctness, the taxpayer's evidence necessarily becomes the sole evidence adduced as to the contested issue. Accordingly, I would reverse.