**RALPH W. FULLERTON COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 74–2979.

United States Court of Appeals,
Ninth Circuit.

March 24, 1977.

Charles P. Duffy, argued, Portland, Or., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Murray S. Horwitz, Atty., argued, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MERRILL and TRASK, Circuit Judges, and BATTIN,* District Judge.

MERRILL, Circuit Judge:

Appellant taxpayer has brought this suit for refund of federal income taxes plus

---

* Honorable James F. Battin, United States District Judge for the District of Montana, sitting by designation.

interest for the years 1969 and 1970 in the total sum of $13,888.50. It has taken this appeal from judgment of the district court in favor of the United States. Presented is the question of its right to take a loss deduction for accounts that formed part of a purchased customer list where the customer subsequently ceased or refrained from doing business with the taxpayer, or, alternatively, its right to take a depreciation deduction.

Taxpayer is a Portland, Oregon, corporation dealing in insurance. In 1968 it purchased all the capital stock of James A. Rossman Company, another Portland insurance company, for $125,000. The purchase price was allocated as follows by the parties to the sale: (1) $5,000 for bank accounts, accounts receivable, reserve for bad debts, furniture, fixtures and equipment; (2) $111,100 for the "accounts, files and dailies of each insured as listed and individually priced * * *"; (3) $8,900 for goodwill.

In 1969 and 1970 taxpayer ascertained which of the purchased accounts had ceased doing business with it, and on its income tax return deducted, as a loss under § 165(a) of the Internal Revenue Code of 1954, the amount allocated by it to such accounts on its purchase price list. On audit, the Commissioner of Internal Revenue determined that taxpayer was not entitled to deduct such amounts as losses. Assessments were made for deficiencies in these respects and were paid by the taxpayer. Claims for refund were filed and disallowed, and this action was brought to recover the amounts disallowed, plus statutory interest. The taxpayer contended in the alternative (1) that it was entitled to a loss deduction on the accounts that had ceased doing business; (2) that it was entitled to depreciation on the accounts purchased. The district court rejected both of these contentions. *Ralph W. Fullerton Co. v. United States*, 381 F.Supp. 1353 (D.Or. 1974). We affirm.

1. Other courts have used the "mass asset rule" to refer to situations where distinct assets are inextricably linked to goodwill and for that reason are not depreciable. *See e. g. Houston*

### 1. *Loss Deduction*

On this aspect of the appeal the controlling case is *Sunset Fuel Co. v. United States*, 519 F.2d 781 (9th Cir. 1975). The issue there was whether the mass asset rule should apply. We held that it should and approved the Commissioner's position with reference to the rule:

" * * * that Taxpayer's purchase of the customer list was the purchase of a single, 'indivisible,' capital asset; that termination of individual accounts merely marks a diminution in the value of the larger asset; and that such diminution is not allowable as a loss because it fails to satisfy the requirement that a loss be 'evidenced by closed and completed transactions, fixed by identifiable events. . . .' Treas.Reg. § 1.165–1(b)."

519 F.2d at 783.[1]

We also stated:

" * * * [T]he indivisible asset rule prevents a loss deduction when the nature of the purchased asset is such that individual accounts cannot be accurately valued. A taxpayer must be able to establish reasonably accurately a basis in the particular account on which the loss is claimed. * * * The taxpayer must * * * prove the portion of the total purchase price allocable to the particular account lost."

519 F.2d at 783.

Appellant contends that the record establishes that the purchased accounts were not a mass asset, that they were valued individually and that the portion of the total purchase price allocated to each particular account was specifically set forth. We cannot agree.

Hendrik Grootendorst, vice-president of taxpayer, evaluated the accounts for taxpayer by the following procedures: first, he eliminated all accounts felt to be without renewal value, such as guardian bonds;

*Chronicle Publishing Co. v. United States*, 481 F.2d 1240, 1249 (5th Cir. 1973), *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974).

second, as to the remaining accounts (with one exception), he took the gross annual commission and multiplied it by two. James Rossman, former owner of the Rossman agency, testified that two times the annual commission was the "going rate" for calculating the purchase price of an insurance business.

*Sunset Fuel* made clear that valuation of customer accounts by resort to a formula applied indiscriminately to all accounts does not sufficiently establish the portion of the purchase price allocable to the individual accounts so as to avoid application of the mass asset rule. Indeed, resort to a formula was felt to be an indication that the individual value of the accounts cannot satisfactorily be ascertained. In *Sunset Fuel* a fuel oil customer list was valued by multiplying the gallonage purchased during the prior year by four cents. We stated:

> "Application of the indivisible asset rule reflects the fact that, when a relatively fungible mass of accounts is purchased, the taxpayer cannot determine the value of each account and establish a basis in it, but rather determines the value of the whole using some rule of thumb technique which discounts the income to be expected from the whole by the risk of discontinuance experience has indicated inheres in the mass as a whole (thereby averaging out the unique and indeterminable risks of each account)."

519 F.2d at 783–84. Later we stated:

> " * * * [T]he formula used was designed to value the aggregate, and was inadequate to value individual accounts. * * * Here, multiplying the prior year's sales by 4 cents provides an accurate estimate of the flow of future income which can be expected from the mass as a whole, because the 4 cent figure relates past sales to future income and incorporates a discount attributable to the risk of discontinuation or nonpayment taken over the mass as a whole. The figure is empirically determined from industry experience; it averages

out the peculiarities of particular accounts."

519 F.2d at 785.

To the same effect is *Tomlinson v. Comm'r of Internal Revenue*, 507 F.2d 723, 725 (9th Cir. 1974).

We conclude that the district court properly rejected the claimed loss deductions for accounts that had ceased doing business.

### 2. Depreciation

■ To depreciate intangible assets such as insurance expirations under 26 U.S.C. § 167(a), the taxpayer must show that the assets are not goodwill and that they have a reasonably ascertainable limited useful life. *Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240, 1250 (5th Cir. 1973), *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 754 (1974); Rev.Rul. 74–456, 1974–2 C.B. 65.

■ Here the taxpayer did not establish as a factual matter that the assets in question had value separate from goodwill. *Compare Marsh & McLennan, Inc. v. Comm'r of Internal Revenue*, 420 F.2d 667, 669–70 (3d Cir. 1969), *with Richard S. Miller & Sons, Inc. v. United States*, 537 F.2d 446, 452–54 (Ct.Cl.1976). *Comm'r of Internal Revenue v. Seaboard Finance Corp.*, 367 F.2d 646 (9th Cir. 1966), on which taxpayer relies, is distinguishable because it involved an unchallenged tax court finding that the intangible assets in question were properly allocated 30 per cent. to goodwill and 70 per cent. to depreciable values. Here the testimony of Grootendorst was to the effect that the figure of $8,900 for goodwill was arbitrarily fixed to bring the total purchase price up to $125,000, the figure demanded by Rossman and which taxpayer was willing to pay. In light of this, we need not consider the district court's alternative ground for disallowing a depreciation deduction—the appellant's failure to show a reasonably ascertainable limited useful life. *See Potts, Davis & Co. v. Comm'r of Internal Revenue*, 431 F.2d 1222 (9th Cir. 1970).

We conclude that the district court properly rejected taxpayer's claim for depreciation.

Judgment affirmed.