ASSOCIATED OBSTETRICIANS AND GYNECOLOGISTS, P.C., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Associated Obstetricians & Gynecologists, P. C. v. Commissioner
Docket No. 8786-80
United States Tax Court
T.C. Memo 1983-380; 1983 Tax Ct. Memo LEXIS 410; 46 T.C.M. (CCH) 613; T.C.M. (RIA) 83380; June 27, 1983. *410 Held: Petitioner corporation has not met its burden of proving that 78 artworks (i.e., paintings, sculpture, batik prints and pottery) displayed in its medical offices had determinable useful lives so as to entitle it to depreciation deductions and an investment tax credit for the taxable years 1976 and 1977. Charles A. Trost and Patricia K. Ganier, for the petitioner. Vallie C. Brooks, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies of $8,790.17 and $3,248.41 in petitioner's Federal corporate income taxes for its 1976 and 1977 taxable years, respectively, and an addition to tax for late filing of $439.51 under section 6651(a)(1) [1] for 1976. After concessions by petitioner, the sole issue remaining for our determination is whether artworks [2] *411 purchased by petitioner and displayed on its business premises as part of the office decor had a determinable useful life so as to entitle petitioner to depreciation deductions and an investment tax credit with respect to such property. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, Associated Obstetricians and Gynecologists, P.C., (AOG) was organized as a professonal corporation under the laws of the State of Tennessee on January 1, 1973. On the date the petition herein was filed, petitioner's principal office and place of business was at 329 22nd Avenue North, Nashville, Tennessee. For each of its taxable years ending December 31, 1976 and December 31, 1977, petitioner filed a Federal corporate income tax return in which it reported its income on the cash basis of accounting, with the Internal Revenue Service Center in Memphis, Tennessee. AOG was organized by Benjamin H. Caldwell to operate a medical office and engage in *412 the practice of the obstetrics and gynecology branch of medicine through its physician employees. Since its incorporation, all of the stock of AOG has been owned by Benjamin Caldwell, president of the corporation. Benjamin Caldwell graduated from Vanderbilt University Medical School in 1960 and, after serving his internship and residency and two years with the United States Marine Corps, began the private practice of medicine in Nashville in April, 1966. Dr. Caldwell practiced medicine as an individual specializing in obstetrics and gynecology until he organized petitioner AOG in 1973. During 1974, AOG moved its medical practice to a new contemporary style office building which had been recently constructed. [3] *413 AOG's office space contains seven bathrooms, eight examining rooms, a large waiting room, three private offices for physicians, a kitchen, a laboratory, and a library. With the exception of the waiting room, the individual rooms comprising the space leased by petitioner are fairly small in size. However, the building contains a large number of linear feet of hallways and walls. Prior to moving into its new quarters in 1974, AOG contracted with an interior decorator in Nashville to create an interior design scheme for petitioner's offices. The decorator was responsible for selecting the floor coverings, window treatments, furniture and upholstery fabrics to be used in conjunction with his design scheme, but was not responsible for selecting any artwork. Petitioner paid the decorator a total of $2,246.94 for his services in January 1975. The decorating was estimated to have a useful life of ten years with a salvage value of $224.69. [4] During 1974 and 1975, AOG purchased office furnishings (not including artworks, medical or office equipment) at a total cost of approximately $25,000. According to its depreciation schedule, petitioner purchased the following items during the years 1973 through 1977. During 1973, AOG acquired 12 paintings ranging in price from $40 to $2,400 *414 and one piece of sculpture at a cost of $1,620. Petitioner's total cost for artwork acquired during 1973 was $11,754.65. During the following year, 1974, AOG purchased eight paintings at costs ranging from $50 to $500. During the same year petitioner acquired two pieces of sculpture at costs of $320 and $2,250. The total amount paid for artwork acquired during 1974 was $5,322.66. In 1975, AOG acquired 12 paintings ranging in price from $100 to $4,500. Petitioner also acquired two batik prints at a cost of $83 and $630 and two pieces of sculpture at a cost of $236.25 and $233.62. The total cost of the artwork acquired in 1975 was $16,818.87. AOG purchased 33 paintings and drawings ranging in price from $175 to $2,000 in 1976. Petitioner also acquired one batik print at a cost of $360 and three pieces of pottery and sculpture at prices ranging from $73.14 and $315 for the pottery to $3,150 for the piece of sculpture. The total cost of paintings, pottery and sculpture acquired by AOG in 1976 was $28,493.14. In 1977, petitioner acquired three pieces of African sculpture at prices of $1,500, $1,200 and $1,121. The corporation also acquired six paintings at prices ranging from *415 $250 to $2,500, one batik for $520 and two pieces of sculpture for $400 and $1,300, respectively. The total cost of the African sculpture, paintings, batik print and other sculpture purchased in 1977 was $13,021. On its 1976 Federal corporate income tax return, AOG listed depreciable assets at the beginning and end of such year in the respective amounts of $105,877.85 and $141,472.79. According to petitioner's depreciation schedule, as of December 31, 1976, AOG had acquired artwork at a total cost of $62,389.32. On its 1977 Federal corporate income tax return, petitioner listed its depreciable assets at the beginning and end of such year in the respective amounts of $141,472.79 and $169,452.70. According to AOG's depreciation schedule, as of December 31, 1977, the corporation had acquired artworks at a total cost of $75,410.32. [5] *416 All of the artwork listed on AOG's depreciation schedule for which it claimed a deduction for depreciation during the taxable years in issue was personally selected by Dr. Caldwell. In selecting a work of art, Dr. Caldwell looked for pieces that appealed to his eye, were neither obtrusive nor an overstatement, and which would look tasteful in AOG's offices. When purchasing art, Dr. Caldwell attempted to buy directly from the artist instead of from an art gallery or dealer in order to save money on the purchase. In many instances he was able to purchase items for 50-60 percent of their then current fair market value. None of the items was purchased for investment purposes on behalf of the corporation. Dr. Caldwell did not buy reproductions of famous paintings because *417 he did not find such paintings aesthetically pleasing. He preferred to buy original artworks as opposed to reproductions because he found original works of art more attractive. Most of the items he selected for AOG were created by Tennessee and local artists. Generally, useful lives of 10 years were selected for the art objects in determining depreciation deductions, the same period selected for the office furnishings and medical equipment of the corporation. However, for a few items useful lives of 5 and 7 years were chosen. For artworks purchased in 1973, 1974 and 1975 the salvage value used was 10 percent of the cost of each item. [6] Artworks purchased in 1976 and 1977, however, were estimated to have no salvage value at the end of their useful lives. The investment tax credit was computed on the same basis used to compute the depreciation deductions on each item. Petitioner claimed total depreciation deductions for office furniture and fixtures of $16,138.95 and $17,869.32 for 1976 and 1977, respectively. [7]AOG also claimed total investment credits of $5,376.48 [8] in 1976 and $2,644.99 in 1977. *418 In the notice of deficiency dated March 6, 1980, respondent determined that the amounts of $5,748.30 and $8,004.45 claimed in 1976 and 1977, respectively, on AOG's corporate income tax returns as depreciation on art objects are not allowable because it has not been established that such items had determinable useful lives or that any amounts are otherwise allowable under section 167. [9] Respondent also determined that that portion of the investment credit allocable to art objects claimed on petitioner's 1976 and 1977 returns in the amounts of $4,504.06 and $1,327.10 is not allowable because it was not established that such items represent qualifying investment credit property within the meaning of section 48. [10] *419 OPINION The issue for our decision is whether artworks acquired by petitioner AOG and displayed in its medical clinic had a determinable useful life so as to entitle petitioner to a deduction for depreciation and an investment tax credit during the taxable years in issue. [11]
(a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) -- (1) of property used in the trade or business * * *. The term "reasonable allowance" *420 is defined in section 1.167(a)-1(a), Income Tax Regs. as that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan * * *, so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property. * * * An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. [12] *421 The facts are undisputed that petitioner purchased 78 art objects during the five year period 1973-1977 at a total cost of $75,410.32. [13] These items were used to decorate AOG's business premises. On its corporate Federal income tax returns for the 1976 and 1977 calendar years, petitioner claimed deductions for depreciation in the amounts of $16,151.45 and $17,869.32, respectively, on office furnishings and medical equipment. Respondent determined that portions of those amounts (i.e., $5,748.30 and $8,004.45, respectively) were not allowable as deductions because they were allocable to artwork which had an indeterminable useful life and, therefore, were not depreciable. The law is well settled that deductions are matters *422 of legislative grace and a taxpayer seeking a deduction must prove that it satisfies the terms of the applicable statute allowing such deduction. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Respondent's determination in the notice of deficiency is presumed to be correct and petitioner bears the burden of proving that it is in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Where respondent has determined that a taxpayer's assets have no determinable useful life and consequently are not depreciable, petitioner must establish that such assets had a determinable useful life and further prove what that useful life is. See Potts, Davis & Co. v. Commissioner,431 F.2d 1222 (9th Cir. 1970), affg. a Memorandum Opinion of this Court. Respondent's regulations define an assets' useful life as not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. * * * Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from *423 natural causes, (2) the normal progress of the art, economic changes, inventions and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Section 1.167(a)-1(b), Income Tax Regs. See Massey Motors v. United States,364 U.S. 92 (1960); Hertz Corp. v. United States,364 U.S. 122 (1960). Respondent's position is based on the proposition that a work of art does not have a determinable useful life and, therefore, depreciation deductions allocable to such items are not generally allowable. See Harrah's Club v. United States,661 F.2d 203, 207 (Ct. Cl. 1981). The theory underlying respondent's argument is that an art object does not not have a determinable useful life for the reason that the physical condition of the property will not ordinarily limit or determine its useful life. In other words, the artworks would not be discarded or retired from service merely because of physical deterioration. Respondent's longstanding posture on this issue is stated in Revenue Ruling 68-232, 1968-1 C.B. 79, which provides *424 in its entirety as follows: A valuable and treasured art piece does not have a determinable useful life. While the actual physical condition of the property may influence the value placed on the object, it will not ordinarily limit or determine the useful life. Accordingly, depreciation of works of art generally is not allowable. A.R.R. 4530, C.B. II-2, 145 (1923), is superseded, since the position set forth therein is restated under current law in this Revenue Ruling. Respondent admits that his position would not prohibit depreciation deductions with respect to artworks if the physical condition of the property can be shown to limit or determine its useful life. In John R. Thompson Co. v. United States,338 F.Supp. 770, 777-779 (N.D. Ill. 1971), affd. 477 F.2d 164 (7th Cir. 1973), the court commented that while a strict application of Revenue Ruling 68-232 to all cases might be of doubtful merit, it approved of its application to the facts before it. The court sustained respondent's disallowance of depreciation deductions on 57 oil paintings on the basis of the same argument respondent makes here. The court held that despite the fact that the works of art were used in the taxpayer's *425 business, they were nondepreciable assets because their physical condition in no way affected their useful life. The court further noted that even if the paintings were depreciable, because the parties stipulated that the paintings were in the same general physical condition in 1962 as they were at the time of purchase in 1929, it would be unable to establish a useful life or the extent of any depreciation. [14]
A fact pattern somewhat akin to the instant facts appears in Judge v. Commissioner,T.C. Memo. 1976-283. In that case petitioner acquired a number of paintaings during 1963 through 1969 at a total cost of $3,332.13. The paintings were used for decorative purposes in petitioner's medical offices and *426 were removed when the offices were refurbished. The Court noted that the position stated in Revenue Ruling 68-232 was not applicable to the facts before it because the paintaings in question "were more wall decorations than works of art". [15] Thus, the paintings could be depreciated if petitioner established their economic useful life and salvage value. However, because no useful life was proved no depreciation deduction was allowed. Compare Hawkins v. Commissioner,T.C. Memo. 1982-451, on appeal (8th Cir., Nov. 4, 1982). We believe the same result is required here. The record shows that the artworks in question were selected by Dr. Caldwell in accordance with his personal teste. The amount paid for each item was based on his estimation of its value as well as a consideration of AOG's available funds. Most of the 78 artworks were by local artists and ranged in price from $40 to $7,000. *427 The artworks were used to decorate AOG's waiting room, halls, examining rooms and physician-employee's offices. Petitioner argues that each of the art objects has a useful life of 10 years and that the appropriate salvage value is 10 percent of the purchase price. While there is some evidence in the record that the interior decorating scheme (excluding the artworks) is expected to last 10 years and that several of the artworks have suffered some minor damage, we are not convinced that such facts have any bearing on the useful life of the artworks. Dr. Caldwell was noncommittal concerning the length of time that he expected the art objects would be displayed in AOG's offices or what disposition would eventually be made of them. In fact, he testified that AOG will keep them until he personally tires of them or as long as the board of directors thinks they "look good". We are unable to find that the vague and conclusory evidence presented is sufficient to sustain AOG's burden of proof that the artworks have a 10-year useful life. [16] *428 Petitioner devotes much of its argument on brief to an attempt to show that the artworks in issue are not "valuable and treasured art piece[s]" within the meaning of Revenue Ruling 68-232. We need not and expressly do not decide if this type of property as a class (whether denominated as a component of the decor or as a "valuable and treasured art piece" has a determinable useful life so as to render such assets subject to an allowance for depreciation. Rather, we hold that on these facts the useful life (or lives) of the 78 artworks in issue here has not been established by petitioner. Thus, respondent's determination must be sustained. Rule 142(a). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years in issue. ↩
2. The terms "artworks" and "art objects" are used herein interchangeably and in a generic sense to describe the items in question in this case (i.e., drawings, paintings, sculpture, pottery, batik prints). Additionally, we attach no legal significance to the use of the words "display" or "decorate" in describing the placement of the artworks in petitioner's offices.
3. The building is owned by a partnership in which Dr. Caldwell is a partner. AOG continued to occupy these offices at the time of trial.
4. This amount represents only the value of the decorator's services in creating the decorating scheme and not the components of the decor selected. The carpets, drapes and other furnishings are separately listed on AOG's depreciation schedules.↩
5. Although there are over 80 items listed on petitioner's depreciation schedule that fall into the category of artworks upon which respondent has disallowed depreciation deductions, only 78 items are in dispute here. The likely explanation for this discrepancy is that certain items were paid for in more than one payment and the accountant mistakenly listed each check as the purchase of a separate item. Apparently only 70 items are currently displayed on petitioner's business premises. The record indicates that several are missing, one was given to a departing employee and several others are on loan to organizations for display in their offices. There is no evidence in the record that any of the artworks in issue here was used for any personal or nonbusiness use.↩
6. For one item, however, a batik print, a salvage value of only 1 percent was used.↩
7. AOG also claimed a depreciation deduction of $12.50 in 1976 for a "leasehold improvement" acquired in that year and having a basis of $250. ↩
8. Of this amount $1,900.40 was a carryover from 1975.↩
9. Respondent has not disallowed depreciation claimed by petitioner for frames and mounting in 1975 totaling $1,659.92 and restoration and framing in 1976 in the amount of $659.41 and in 1977 in the amount of $987.22. ↩
10. Respondent recomputed the allowable investment credit as $872.42 for 1976 and $1,317.89 for 1977.
11. Property must be depreciable in order to qualify for the investment credit under section 38. Section 1.48-1(b)(1), Income Tax Regs. states that property does not qualify for the investment credit unless a deduction for depreciation * * * with respect to such property is allowable to the taxpayer for the taxable year. A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 * * *. Therefore, our decision as to whether the property in question is depreciable will also determine whether petitioner is entitled to the disallowed investment credit.↩
12. Section 1.167(a)-1(c)(1), Income Tax Regs. provides: Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. * * * Section 201(a) of The Economic Recovery Tax Act of 1981 (Pub. Law 97-34) restructured the system for recovering the cost of most depreciable property placed in service after December 31, 1980. Under the new Accelerated Cost Recovery System, salvage value is no longer a factor and the unadjusted basis of recovery property is generally recoverable in 3, 5, 10 or 15 years. Section 168(b). Section 168(c)(1)↩ defines the term "recovery property" as "tangible property of a character subject to the allowance for depreciation."
13. Although there is some indication in the record that respondent challenged the substantiation of the amounts AOG claimed as its basis in the various artworks, we assume from respondent's arguments on brief that petitioner's claimed total basis in the items is not in dispute at this point.↩
14. Section 1.167(a)-2, Income Tax Regs., provide The depreciation allowance in the case of tangible property applies only to that part of the property which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence. The allowance does not apply to inventories or stock in trade, or to land apart from the improvements or physical development added to it. * * * See A. Duda & Sons, Inc. v. United States,560 F.2d 669, 678↩ (5th Cir. 1977).
15. The record showed that the paintings were by unknown artists and that none of them cost over $100 and that most cost $50 or less. The Court concluded that the paintings were not of the kind ordinarily considered "valuable and treasured" works of art within the meaning of Revenue Ruling 68-232↩.
16. Also, petitioner has not met its burden of proving that 10 percent is a reasonable estimation of the salvage value of the artworks after only 10 years of use in its business. While the time at which an asset is retired from service may vary according to the policy of the taxpayer, "[i]f the taxpayer's policy is to dispose of assets which are still in good operating condition, the salvage value may represent a relatively large proportion of the original basis of the asset." Edwards v. Commissioner,67 T.C. 224, 239↩ (1976).